IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| MICHAEL BENNETT and LINDA BENNETT,<br><br>    Plaintiffs,<br><br>  v.<br><br>ISLAMIC REPUBLIC OF IRAN,<br><br>    Defendant. | No. CV 11-80065 MISC CRB (NJV)<br><br>**ORDER DENYING PLAINTIFFS' APPLICATION FOR WRIT OF ATTACHMENT AND EX PARTE MOTION**<br><br>(Docket Nos. 2, 13) |

The district court has referred Plaintiffs Michael Bennett and Linda Bennett's Application for Writ of Attachment to this Court for determination. Doc. No. 4. Plaintiffs subsequently filed an ex parte motion to enforce the judgment against Defendant Islamic Republic of Iran pursuant to 28 U.S.C. § 1610(c). Doc. No. 13. The Court heard argument on the writ of attachment and ex parte motion on July 1, 2011. Having carefully considered the arguments and the papers submitted, and for the reasons provided below, the Court **denies** Plaintiffs' writ of attachment and ex parte motion.

## I. BACKGROUND

Plaintiffs seek a writ of attachment to enforce a judgment entered in the district court for the District of Columbia in Plaintiffs' favor in the amount of $12,904,548.00. *See Bennett v. Islamic Republic of Iran*, 507 F. Supp. 2d 117 (D.D.C. 2007) (granting default judgment for Plaintiffs). The factual and procedural background of the underlying judgment is described in detail in decisions by the district court for the District of Columbia and the Court of Appeals for the District of Columbia

Circuit. *See Bennett v. Islamic Republic of Iran*, 618 F.3d 19 (D.C. Cir. 2010) (holding Iran's former diplomatic properties were immune from attachment); *Bennett v. Islamic Republic of Iran*, 604 F. Supp. 2d 152 (D.D.C. 2009) (granting government's motion to quash writs of attachments issued against Iran's former diplomatic properties located in the District of Columbia), *aff'd*, 618 F.3d 19 (D.C. Cir. 2010); *Bennett*, 507 F. Supp. 2d 117 (granting default judgment for Plaintiffs). As summarized by Judge Royce Lamberth of the D.C. district court:

> Marla Ann Bennett, an American citizen and resident of California, was just 24 years old when she was murdered by terrorists. She was killed when Hamas operatives detonated a bomb inside a cafeteria at the Hebrew University in Jerusalem in July of 2002. In an effort to achieve some measure of justice, Marla's parents brought a civil action against Iran and its Ministry of Information and Security (MOIS) under [28 U.S.C.] § 1605(a)(7). The Bennetts demonstrated through evidence satisfactory to this Court, *see* [28 U.S.C.] § 1608(e), that Iran and its MOIS provided material support to Hamas in furtherance of terrorist objectives. *See Bennett v. Islamic Republic of Iran*, 507 F. Supp. 2d 117 (D.D.C. 2007) (Lamberth, J.). Plaintiffs were awarded a judgment in excess of 12 million dollars. To date, that judgment remains unsatisfied.

*Bennett*, 604 F. Supp. 2d at 154. The default judgment was entered pursuant to the "state-sponsored terrorism" exception, 28 U.S.C. § 1605(a)(7),[1] to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330(a), 1602–1611. *Bennett*, 507 F. Supp. 2d at 124-25.

"In an effort to execute their judgment against Iran, plaintiffs procured" five writs of attachment against former diplomatic properties belonging to the Islamic Republic of Iran in Washington, D.C., including Iran's former embassy, ambassador's residence, another diplomatic residence, and two parking lots.[2] *Bennett*, 604 F. Supp. 2d at 154. "The United States has been the

---

[1] The "state-sponsored terrorism" exception in 28 U.S.C. § 1605(a)(7) was repealed in 2008 and replaced by 28 U.S.C. § 1605A. *See* Pub.L. 110-181, Div. A, § 1083(b)(1)(A)(iii), Jan. 28, 2008, 122 Stat. 341.

[2] The Court notes that Plaintiffs did not inform the Court of their previous efforts to attach Iran's former diplomatic properties.

2

custodian of these properties since April 7, 1980, when it cut diplomatic ties with Iran in response to the take-over of the American Embassy in Tehran." *Bennett*, 618 F.3d at 21.  The United States moved to quash the five writs of attachment and the D.C. district court granted the government's motion, holding that the former diplomatic properties of Iran were immune from attachment. *Bennett*, 604 F. Supp. 2d at 170.  On September 10, 2010, the D.C. Circuit Court affirmed the quashing of the writs of attachment. *Bennett*, 618 F.3d at 24.

On March 25, 2011, Plaintiffs registered the D.C. district court's default judgment in the Northern District of California and filed their application seeking a writ of attachment to enforce the judgment.  Doc. No. 2.  The district court referred Plaintiff's application to this Court on April 5 2011.  On June 27, 2011, the Court terminated various filings made by Plaintiffs to allow Plaintiffs to clarify and correct their filings.  Doc. No. 12.  Plaintiffs then filed an ex parte motion to enforce the judgment against Iran pursuant to 28 U.S.C. § 1610(c), which provides that attachments are not "permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required."  Doc. No. 13.  The Court heard argument on the writ of attachment and ex parte motion on July 1, 2011.

## II. DISCUSSION

Plaintiffs seek a writ of attachment of Iranian assets allegedly held at two banks:  1) the Bank of America Corporation, 2001 Clayton Road, Building B., 4th Floor, Concord, California; and 2) Franklin Resources Inc. (d/b/a Franklin Templeton Fiduciary Trust), One Franklin Parkway, Building 970, 1st Floor, San Mateo, California.  Plaintiffs allege that Bank of America and Franklin Resources possess tangible assets, property, and/or financial accounts owned by Defendant Islamic Republic of Iran and which have been blocked by the United States government in part to satisfy judgments such as the one obtained by Plaintiffs here in the D.C. district court.  Plaintiffs seek to attach a total of $14,951,845.92 from each bank, which includes interest on Plaintiffs' $12.9 million default judgment.  Plaintiffs further allege, and clarified at the July 1, 2011 hearing, that the blocked amounts held by Bank of America and Franklin Resources would satisfy Plaintiffs' $12.9 million judgment plus interest.

3

**A.      Jurisdiction:  Terrorism Exception to the FSIA**

In *Peterson v. Islamic Republic of Iran*, the Ninth Circuit described the requirements for jurisdiction in a post-judgment action against a foreign state:

> The Foreign Sovereign Immunities Act provides "the sole basis for obtaining jurisdiction over a foreign state in our courts."  Unless a specified exception to foreign sovereign immunity applies, this court lacks jurisdiction.
>
> Under the terrorist act exception, a foreign state shall not be immune from suit in any case "in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1) (original version at 28 U.S.C. § 1605(a)(7) (2000)). The foreign state defendant must have been designated a state sponsor of terrorism by the State Department either at the time the terrorist act occurred or as a result of that act, the claimant or the victim must be a U.S. national, and the foreign state must have been given an opportunity to arbitrate if the terrorist act occurred in its own territory.  28 U.S.C. § 1605A(a)(2) (original version at 28 U.S.C. § 1605(a)(7)(A)-(B) (2000)).

627 F.3d 1117, 1122-23 (9th Cir. 2010) (internal case citations omitted) (quoting *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)).  Like *Peterson*, all four jurisdictional requirements under FSIA's terrorist act exception are also met here:  1) this suit seeks to enforce the judgment for money damages against a foreign state; 2) Plaintiffs seek damages for death resulting from Iran's provision of material support to Hamas in connection with the July 2002 bombing in Jerusalem; 3) Iran was designated a state sponsor of terrorism on January 19, 1984, *see* 50 U.S.C. app. 2405(j)(3); 49 Fed. Reg. 2836-02 (Jan. 23, 1984) (notice from George P. Shultz, Secretary of State, designating Iran a state sponsor of terrorism); and 4) D.C. District Judge Lamberth established that Plaintiffs and the victim, Marla Bennett, were U.S. nationals before awarding damages, *Bennett*, 507 F. Supp. 2d at 125, and the bombing took place in Israel, not Iran, "therefore the plaintiffs were not required to arbitrate their claims before bringing suit in federal court." *See Peterson*, 627 F.3d at 1123.

This Court has jurisdiction to enforce  the default judgment against Iran, which was registered in this district, because a judgment creditor (here, Plaintiffs) may bring an action to enforce a judgment in any district court.  *See id*.

4

## B.     Reasonable Time Period and Notice Under 28 U.S.C. § 1610(c)

Having found that this Court has jurisdiction, the Court next examines Plaintiffs' arguments in their ex parte motion regarding 28 U.S.C. § 1610(c). Plaintiffs filed their ex parte motion to enforce the judgment against Iran pursuant to 28 U.S.C. § 1610(c), which provides that attachments are not "permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required." On January 25, 2011, the D.C. district court issued an order finding that Defendant Iran received adequate notice of the default judgment against it and that "a 'reasonable period of time has elapsed' to permit plaintiffs to attempt collection of their judgment by 'attachment or execution.'" *Bennett v. Islamic Republic of Iran*, No. 03-1486 (D.D.C. filed Jan. 25, 2011) (quoting § 1610(c)) (Doc. No. 13-1). The Court notes that Plaintiffs were not required to serve their post-judgment motions, such as their ex parte motion, on Iran. *See Peterson*, 627 F.3d at 1129-30 (holding that the FSIA does not require service on a foreign state of post-judgment motions or the registration of judgment in another district court). Because the D.C. district court has already found that § 1610(c) does not bar Plaintiffs' attempts to collect payment on the default judgment against Defendant Iran, the Court next examines whether Plaintiffs may attach Iran's assets held in the two bank accounts identified.

## C.     Writs of Attachment

Separate from the question of whether jurisdiction is present based on the terrorist act exception to a foreign state's immunity from lawsuits, Plaintiffs must establish 1) an exception to *immunity from attachment* of the foreign state's property; or 2) the existence of "blocked assets" of a terrorist party to execute the judgment under the Terrorism Risk Insurance Act ("TRIA").

### 1.     Attachment Immunity

Section 1609 of the FSIA, 28 U.S.C. § 1609, provides that "a foreign state's property in the United States is immune from attachment unless a specific statutory exception to immunity applies" under §§ 1610 or 1611. *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 785 (7th Cir. 2011). For example, under § 1610(a)(2), a foreign state's property used for commercial activity in the United

5

1  States is immune from attachment if "the property is or was used for the commercial activity upon
2  which the claim is based."

3      "Plaintiffs bear the burden to demonstrate the existence of specific property for attachment
4  and that sovereign immunity as to such property has been waived" or that an exception to
5  attachment immunity is established. *Peterson v. Islamic Republic of Iran*, 2008 WL 5046327, *2
6  (N.D. Cal. 2008) (not reported) (citing *Autotech Technologies LP v. Integral Research &*
7  *Development Corp.*, 499 F.3d 737, 749-50 (7th Cir. 2007)); *see Rubin*, 637 F.3d at 796; *In re Islamic*
8  *Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d 31, 122 (D.D.C. 2009) ("Moreover, plaintiffs still
9  have the burden of proving Iranian ownership-whether beneficial or otherwise-of the assets at issue,
10 which can be extraordinary [sic] challenging in this context."). Here, Plaintiffs do not argue that a
11 statutory exception under §§ 1610 or 1611 applies to permit attaching Iran's alleged assets at Bank
12 of America or Franklin Resources. Plaintiffs do not, in fact, present any arguments or cite to any
13 authority to establish an exception to the attachment immunity in either of Iran's alleged bank
14 accounts. Plaintiffs have failed to cite to any authority where assets of the Iranian government held
15 at an American bank were attached for the purpose of enforcing a default judgment against Iran.
16 Plaintiffs only cite to sections 1608, which addresses service on a foreign state, and 1610(c), which
17 addresses the reasonable period of time after entry of judgment. Plaintiffs therefore fail to carry
18 their burden to establish attachment immunity.

19     Even if Plaintiffs had attempted to assert an exception to § 1609's attachment immunity,
20 those efforts would have likely failed. *See Rubin*, 637 F.3d at 793 (reversing the district court in the
21 plaintiffs' efforts to attach three Iranian collections housed at Chicago's Field Museum to enforce a
22 default judgment against Iran from a 1997 terrorist bombing in Jerusalem); *Peterson*, 627 F.3d at
23 1130-31 (section 1610(a) exception to attachment immunity not established because Iran's rights to
24 payment from a third party debtor located in France were immune from execution). In *Rubin*, the
25 Seventh Circuit stated:

26     We now join these courts in concluding that under § 1609 of the FSIA, the
    property of a foreign state in the United States is presumed immune from attachment
27     and execution. The immunity inheres in the property and does not depend on an
    appearance and special pleading by the foreign state itself. The party in possession of
28     the property may raise the immunity or the court may address it sua sponte. Either

6

> way, the court must independently satisfy itself that an exception to § 1609 immunity applies before ordering attachment or other execution on foreign-state property in the United States.

*Rubin*, 637 F.3d at 801.

### 2. "Blocked Assets" Under the TRIA

Under the Terrorism Risk Insurance Act of 2002 ("TRIA"), the "blocked assets" of a terrorist party or its agency or instrumentality are subject to execution to satisfy a judgment obtained under the FSIA's terrorism exception, § 1605(a)(7). *See* Pub.L. No. 107–297, Title II, § 201(a), 116 Stat. 2322, 2337 (2002) (codified at 28 U.S.C. § 1610 note). Section 201(a) of the TRIA, provides as follows:

> Notwithstanding any other provision of law, and except as provided in subsection (b), in every case in which a person has obtained a judgment against a terrorist party on a claim based on an act of terrorism, or for which a terrorist party is not immune under [28 U.S.C. § 1605(a)(7)], the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in the aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

TRIA § 201(a), 116 Stat. at 2337. "The TRIA provides jurisdiction for execution and attachment proceedings to satisfy a judgment for which there was original jurisdiction under the FSIA (which is not challenged here) if certain statutory elements are satisfied." *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 52 (2d Cir. 2010).

The Court has found one case in which the real property of an Iranian instrumentality (an Iranian bank) was attached pursuant to TRIA § 201(a) to enforce a default judgment against Iran arising out of a terrorist bombing. *See id*. In *Weinstein v. Islamic Republic of Iran*, the district court entered a default judgment against Iran in the amount of approximately $183.2 million to the estate and survivors of an American citizen killed in a terrorist bombing in Israel. 184 F. Supp. 2d 13 (D.D.C. 2002) (J. Lamberth). After registering the judgment in the Eastern District of New York, the district court denied the plaintiffs' attempts to attach Bank Melli Iran's accounts at the Bank of New York. 299 F. Supp. 2d 63, 74-76 (E.D.N.Y. 2004) (holding that Iranian banks' assets maintained at the Bank of New York were not "blocked assets" under TRIA and rejecting argument that after November 14, 1979 all Iranian assets were "blocked assets"). A few years later in October

7

2007, immediately after Bank Melli's assets had been officially blocked by the United States government, one of the plaintiff judgment-creditors moved to appoint a receiver to sell real property owned by Bank Melli in New York, "to attach and sell in partial satisfaction of the judgment."  609 F.3d at 46.  The district court granted the plaintiff's motion to appoint a receiver and on appeal, the Second Circuit affirmed.  *Id*.  The Second Circuit held that TRIA § 201(a) was satisfied because 1) Iran has been designated a "terrorist party"; 2) the district court in the underlying action found that Iran was not immune under the FSIA's state-sponsored terrorism exception in 28 U.S.C. § 1605(a)(7); 3) Bank Melli's assets were "blocked" by Executive Order; and 4) Bank Melli conceded that it was an instrumentality of Iran.  *Id*. at 48.  The court rejected Bank Melli's argument that the TRIA did not apply because Bank Melli was not a party in the underlying default judgment against Iran.  *Id*. at 48-49.  The court also rejected challenges to the constitutionality of the TRIA, arguments based on the Treaty of Amity that the United States and Iran signed in 1955 and the Algiers Accords entered by the United States and Iran in 1980, and arguments that the attachment constituted a taking of physical property in violation of the Takings Clause of the Fifth Amendment.  *Id*. at 50-56.

Here, Plaintiffs' two page application for a writ of attachment refers to the banks' assets as "blocked":[3]

> ¶ 2.   Upon information and belief both judgment garnishees Bank of America Corporation and Franklin Resources Inc. are in possession of tangible and/or intangible assets/ property/ financial accounts blocked by the United States Government which are owned and/ or have a nexus with the Judgment Debtors Islamic Republic of Iran and its agents and instrumentalities.  These assets have been blocked by the United States Government for various reasons including the satisfaction of judgments such as the one obtained by the Judgment Creditors in this action.
>
> ¶ 3.   Upon information and belief the amount held by Garnishees may satisfy some or all of the Judgment Creditor's judgment against the Judgment Debtor.

Doc. No. 2, ¶¶ 2-3.

Unlike *Weinstein*, besides simply stating that there are "blocked" assets held at the two banks, Plaintiffs have failed to provide any support whatsoever that the Iranian government owns

---

[3] Plaintiffs' ex parte motion to enforce the judgment does not refer to "blocked assets."

8

assets, property, or financial accounts held at either bank, and Plaintiffs fail to identify the actual alleged assets, property, or financial accounts owned by Iran. Plaintiffs also fail to identify whether the assets are actually owned by Iran, its agencies, or its instrumentalities. And if the assets are owned by an agency or instrumentality of the Iranian government, Plaintiffs fail to identify the agency or instrumentality by name. Where Plaintiffs only provide vague, indeterminate information, the Court is unable to determine whether either bank maintains any "blocked assets" of Iran for the application of the TRIA. Therefore, the Court concludes that TRIA § 201(a) is not applicable here.

### III. CONCLUSION

For the reasons provided above, the Court **denies** Plaintiffs' writ of attachment and ex parte motion to enforce their judgment. The Court grants Plaintiffs leave to file an amended writ of attachment to enable Plaintiffs to provide specific information regarding Iran's alleged assets maintained at the two banks and to adequately brief whether TRIA is applicable.[4] Plaintiffs are not alone in their unsuccessful attempts to attach Iran's property or assets to enforce default judgments against Iran arising out of terrorist attacks. Other courts share this Court's concern that practically speaking, it is incredibly difficult for terrorist victims such as Marla Bennett to enforce and collect on their default judgments against Iran due to foreign sovereign immunity, attachment immunity, limited Iranian assets in comparison to the amount of default judgments against Iran, and the intricacies of the various laws regarding terrorist victim cases. *See In re Islamic Republic of Iran Terrorism Litig.*, 659 F. Supp. 2d at 122-24. In his detailed *In re Islamic Republic of Iran Terrorism Litigation* order, Judge Lamberth summarized limited Iranian assets against the amount of outstanding default judgments against Iran:

> In the case of Iran, however, the simple fact remains that very few blocked assets exist. In fact, according to OFAC's [the Office of Foreign Assets Control of the Treasury Department] latest report, there are only 16.8 million dollars in blocked assets relating to Iran. This amount is inconsequential-a mere drop in the bucket-when compared to the staggering 9.6 billion dollars in outstanding judgments entered against Iran in terrorism cases as of August 2008, which is the last time the Congressional Research Service compiled data on this issue. The amount of Iranian non-blocked assets within the United States, as reported to OFAC, is similarly inconsequential in comparison to Iran's liability under the FSIA terrorism exception.

---

[4] To date, Plaintiffs' filings have been cursory and at times, confusing.

9

According to OFAC, the amount of non-blocked Iranian assets is merely 28 million dollars.

*Id*. at 58.

**IT IS SO ORDERED.**

Dated: July 25, 2011

NANDOR J. VADAS
United States Magistrate Judge